1218

Clark & Clark, of Fort Worth, for plaintiff in error.

Roy T. Osborn, of New York City, and V. R. Tomlinson and Cantey, Hanger & McMahon, all of Fort Worth, for defendant in error.

## GARRETT v. SINCLAIR REFINING CO.

:No. 13369.

Court of Civil Appeals of Texas. Fort Worth.

May 1, 1936.

Rehearing Denied June 12, 1936.

BROWN, Justice.

Appellant, T. L. Garrett, as next friend for his little daughter, brought suit against appellee, Sinclair Refining Company, for damages, alleging, in substance, that appellant was employed by appellee to work at its refinery in Fort Worth, and that appellee was guilty of negligence in constructing a rude building as a water closet for the use of its employees, in that there was no separate place to be used as a urinal and only a narrow board furnished for use as a seat, over which board the employees urinated, and such place became filthy, and on such board there were deposited gonorrhea germs, and that appellant, in using the premises thus furnished him, contracted

gonorrhea; that, being unfamiliar with the symptoms of such disease and not knowing that he had it, appellant was the cause of his said minor daughter contracting the disease through the use of the same toilet seat in appellant's home and the towels used by appellant.

A great many issues were submitted to the jury after the trial court had refused to give appellee a peremptory instruction. To prevent the opinion from being more lengthy than the issues involved deserve, we will only refer to some of these findings.

The jury found that appellee failed to furnish appellant safe toilet facilities; that such failure was negligence; that appellant became infected with the said disease from the use of the toilet; that the negligence of appellee was a proximate cause of his being infected; that the said toilet was not used by persons infected with gonorrhea while appellant was working at the plant; that appellant did not know that persons infected with such disease were using the toilet, and that appellant, by the exercise of ordinary care, could not have discovered that the toilet was used by persons so infected; that appellant voluntarily exposed himself to the dangers attendant upon using the toilet; that his act in so doing was negligence and was the proximate cause of his contracting the disease, but that it was not the sole proximate cause; that appellant failed to keep a proper lookout for his own safety in using the toilet; that this was negligence, and that it was a proximate cause of his contracting the disease, but that it was not the sole proximate cause; that appellant was negligent in using the toilet facilities in the manner and way in which he actually used them, and that such negligence was the proximate cause of his contracting the disease, but same was not the sole proximate cause; that the negligence of the refining company found by the jury was a proximate cause of appellant's little daughter contracting the disease; that appellant failed to exercise ordinary care in his home to protect the health of his little daughter after he discovered that he had contracted the disease; that this negligence was not the sole proximate cause of the child contracting the disease; and the jury awarded damages in the sum of $1,500.

At appellee's request, other issues were given, from which the jury found that appellant negligently used the toilet, bathtub, towels, and linens in his home after he had contracted the disease; that this was not the sole proximate cause of the little girl contracting it; that appellant failed to exercise ordinary care for the safety of his little daughter; that this was not the sole proximate cause of her infection; that appellant failed to exercise ordinary care for his own safety; that this was not the sole proximate cause of the child's infection; that appellee did not provide appellant with toilet facilities other than the toilet complained about; that, after appellant contracted the disease, he failed to take proper precautions to safeguard the health of his child; that this was not the sole proximate cause of the child's infection; that the contracting of the disease by the child was not an unavoidable accident.

Appellant and appellee moved for judgment on the verdict; appellant's motion was overruled, appellee's was sustained, and judgment was rendered denying appellant, as next friend of his minor child, recovery of damages. Hence the appeal.

Appellant brings forward forty-four assignments of error and twenty-one propositions. We shall not attempt to discuss all of them, viewing the case as we do. The question for our determination is, Should the trial court, under the evidence found in this record, have given appellee a peremptory instruction? We are of the opinion that the peremptory instruction so requested should have been given.

The issue of foreseeableness cannot be lost sight of in causes of action founded upon negligence. If this were not true, every remote act of negligence would result in mulcting the wrongdoer in damages, regardless of any and all intervening causes which may have concurred in bringing about the result of which complaint is made.

Furthermore, verdicts should not be permitted to stand when based on surmise and speculation. In any case such as the one before us, there must be evidence that there was a reasonable probability of appellant having contracted the disease because of some negligence on the part of appellee.

Appellant contends that any negligence upon the part of the child's father cannot be imputed to the minor child, but the cases cited to support such contention, such as Western Union Tel. Co. v. Hoffman, 80 Tex. 420, 15 S.W. 1048, 26 Am.St.Rep. 759, are easily distinguishable from the case at bar, in that in those cases the parties sought

to be held in damages were guilty of negligence which directly affected the minor child, and the father's negligence was merely a concurring cause of the injury. In the case cited, the child had broken his arm, and the parents wired the doctor to come immediately to attend the child. The telegram was delayed for several days. No other dispatch was sent, and no further effort was made to secure that particular physician or any other, and nothing was done by the parents to relieve the child, and, when the doctor finally attended the child, it was too late to restore his arm to a normal condition.

■ In the case at bar, even if it be conceded that appellant contracted the disease through the negligence of appellee, it cannot be said that appellee could have reasonably foreseen that appellant would be guilty of gross neglect of his own duty toward the members of his own household and that he would in all probability, through such neglect, communicate this loathsome disease to his minor daughter. On the other hand, all reasonable minds would conclude that a father, infected with a loathsome disease, would take every precaution to safeguard the bodies and the health of the members of his own family.

■ Under the record in this case it appears to us that the prior or remote cause which is sought to be made the basis of this action for damages did nothing more than furnish a condition which made the injury possible, but that the injury was actually the result of some other cause which reasonable minds would not and ought not to have anticipated. Phoenix Refining Co. v. Tips, 125 Tex. 69, 81 S.W.(2d) 60.

In the case of Blossom Oil & Cotton Co. v. Poteet, 104 Tex. 230, 136 S.W. 432, 434, 35 L.R.A.(N.S.) 449 (Supreme Court), the following language is used: "Undoubtedly the law imposed on him [the father] the duty to protect his child, whether he is master or servant. To discharge this duty he was under the strongest obligations which can affect or move any man. To this legal duty was added the incentive of love and the obligations of paternity. He might cease to be an employee. He could never cease to be a father while he had life and being. If we could assume that the managing officer of plaintiff in error had seen the child in the mill with her father and at the time in a place of safety as she was, could it not be assumed, and ought it not to be held, that the company might rely on the natural affection common to all humanity, an affection which money cannot buy nor time wither, as to dangers known to the father, to take proper and effective steps to secure such child from injury? In order to hold the oil mill liable, there must be evidence of negligence, and that its conduct in the circumstances appearing in the case was violative of some duty which the law imposed on it. So situated, might it not trust to the protection which both law and duty would assure? The duty to protect the child in the possession and under the immediate control of both the father and mother is both legal and moral and is continuing and affirmative, and, at least until it is known that they have abandoned the child and its danger becomes apparent, the master is not liable. To hold otherwise would, as we believe, be at variance with correct legal principles and out of harmony with all that moves and controls men in the affairs of life. On the other hand, the conclusion to which we have arrived attains what should always be the supreme and ultimate end of the law—justice, of which it may be truly said that 'the merchandise of it is better than the merchandise of silver and the gain thereof than fine gold.' 'Ye cannot serve two masters' is not only the declaration of Holy Writ, but as well the experience of all the ages. The father could not in the circumstances of this case, as we believe, be held to abdicate the high duties of father to the end and with the effect of stamping his conduct as mere employee with such negligence as to render his employer liable."

This case is controlled by the principles announced by our Supreme Court in Seale v. G. C. & S. F. Ry. Co., 65 Tex. 274, 57 Am.Rep. 602, and Texas & P. Ry. Co. v. Bigham, 90 Tex. 223, 38 S.W. 162.

■ Furthermore, in closing this opinion, we desire to say that the evidence is insufficient to sustain a finding that appellant contracted this venereal disease in appellant's toilet. We have searched the statement of facts, and we do not find where appellant ever testified that on any occasion he sat upon the board, which is the subject of the controversy, and that his private organ ever came in actual contact with the board on which the germs are alleged to have been deposited, and all of the testimony of the expert witnesses, viz. the doctors, is to the effect that it was possible for appellant to have contracted gonorrhea by the use of the toilet, but that this was not probable. As we see it, the finding

of the jury was based on a mere possibility, and there was not sufficient evidence to raise a reasonable probability of appellant's having so contracted the disease.

As was said by Mr. Justice Denman in Joske v. Irvine, 91 Tex. 574, 582, 44 S. W. 1059, 1064: "Upon the whole case, we are of opinion that the probative force of the testimony does not go beyond the point of creating a mere surmise or suspicion that Joske 'requested or directed' the arrest, and that, therefore, under the principles above discussed, there is not, in legal contemplation, 'any evidence' of that fact."

As to the medical testimony which covers the possibility of appellant having contracted the disease at appellee's toilet, we cite Galveston, H. & S. A. Ry. Co. v. Powers, 101 Tex. 161, 105 S.W. 491.

The judgment of the trial court is affirmed.